5:19mj43-MJF

### AFFIDAVIT

I, John Deegins, being first duly sworn, hereby depose and state as follows:

## **TRAINING AND EXPERIENCE**

1. I am an "investigative or law enforcement officer" within the meaning of Title 18, United States Code, Section 2510(7), that is, an officer of the United States who is empowered by law to conduct investigations of, and to make arrests for, offenses enumerated in Title 18, United States Code, Section 2516. I am a Lieutenant for the Panama City Beach Police Department currently assigned as a Task Force Officer for the Drug Enforcement Administration ("DEA"). I have been employed with the Panama City Beach Police Department for over 20 years. During my employment with the Panama City Beach Police Department, I have participated in criminal investigations to include narcotic investigations, which have included physical surveillance, execution of search warrants, and the arrests of numerous drug traffickers. I have spoken with defendants, confidential informants, and witnesses having knowledge of the workings of major narcotics trafficking organizations. Through these investigations, my training and experience, and conversations with other law enforcement personnel, I have become familiar with methods used by traffickers to smuggle and safeguard narcotics, to distribute narcotics, and collect and launder related proceeds. I am aware of methods employed by major narcotics organizations to thwart any investigation of their illegal activities. During my work as a law enforcement officer, I have worked with undercover agents, where they have purchased illegal drugs, or negotiated for the purchase or sale of drugs. I have also participated in state and federal drug Title III investigations.

1

RCVD USDC FLND PC
JUL 15 '19 AM 11:05

2.  This affidavit is made in support of an application for the issuance of a search warrant for the cellular telephone of Cory Johnson (hereinafter referred to as the ("**Target Telephone**") which I respectfully submit contains evidence of an on-going conspiracy to distribute controlled substances, and possession of controlled substances with the intent to distribute, in violation of Title 21, United States Code, Sections 841(a)(1), and 846.

3. The statements contained in this affidavit are based, in part, upon: information that was provided by Special Agents and deputized Task Force Officers with the DEA; Special Agents of the Florida Department of Law Enforcement, confidential sources and covert recording devices utilized during controlled purchases of controlled substances.

4.  Since this affidavit is being submitted for the limited purpose of securing authorization for the search of **Target Telephone**, I have not included each and every fact known to me concerning this investigation.  More specifically, I have set forth only those facts that I believe are necessary to establish the required foundation for an order authorizing the search of the **Target Telephone**.

## DETAILED DESCRIPTION OF THE TARGET TELEPHONE

5. The **Target Telephone** is described as a black Samsung cellular telephone, model number SM-N950U, Serial Number R38J80VL5QX, IMEI #352076091125623, telephone number (256) 452-2154. Based on facts set forth in this affidavit, your affiant will show that Cory Johnson is a cocaine trafficker who used the **Target Telephone** to facilitate his drug trafficking business. The **Target Telephone** is located at the Drug Enforcement Administration (DEA) Panama City Resident Office.  The Target Telephone was seized by law enforcement on June 26, 2019, and has been secured with the DEA since that date.

2

**PROBABLE CAUSE**

**BACKGROUND OF THE INVESTIGATION**

6. In March 2019, law enforcement began utilizing a Confidential Source (hereinafter referred to in this affidavit as the "CS"), who was previously a target of this investigation. The CS cooperated with law enforcement in an effort to gain favorable treatment in connection with pending state criminal charges arising from this investigation. Since the CS began cooperating, law enforcement has corroborated much of the information provided by the CS. Law enforcement did not find any of the information provided by the CS to be false or misleading.

7. The CS's criminal history according to the NCIC database shows the CS was arrested on October 7, 2002, for fraudulent use of credit card; on October 25, 2002, for grand theft; on March 12, 2004, for burglary and grand theft; on May 09, 2004, for possession of marijuana less than 20 grams; on October 18, 2005, for motor vehicle theft; on May 18, 2006, for uttering a false instrument, altering a public record and petit theft; on June 19, 2006, for trespassing, on November 21, 2006, for burglary and grand theft; on December 1, 2006, for grand theft over twenty thousand dollars; on December 19, 2009, for violation of probation; on July 11, 2010, for driving while license was suspended; on December 15, 2010, for violation of probation; and on March 9, 2018, for grand theft.

8. On March 22, 2019, the CS provided the following information relating to one of the CS' source of cocaine supply. The CS stated a black male named Cory Johnson brought kilogram quantities of cocaine into Callaway, Florida, and would deliver the cocaine to Calvin Johnson. Calvin Johnson then distributed cocaine to Michael Hines and others. The CS said he/she has purchased ounce quantities of cocaine from Calvin Johnson within the past year.

3

9.   Your Affiant was able to identify the individuals named in this affidavit by various methods, which include photo identification, and the use of a covert camera during controlled purchases of cocaine by the CS.

## CONTROLLED PURCHASE OF 1.5 OUNCES OF COCAINE FROM CORY JOHNSON AND CALVIN JOHNSON ON MARCH 29, 2019

10.   On March 29, 2019, at approximately 1:28 p.m., at the direction of your affiant, the CS conducted a recorded telephone call to Calvin Johnson, who was using telephone number (386) 410-9162, and arranged for the purchase of 1.5 ounces of cocaine in exchange for $2,000.00.

11. At approximately 5:15 p.m., law enforcement met with the CS at a predetermined meet location. The CS and the CS' vehicle were searched for contraband by TFOs with negative results. The CS was provided with $2,000.00 in official advanced funds (OAF) for the controlled purchase of cocaine. The CS and law enforcement traveled to a secondary meet location where the covert recording devices were activated and provided to the CS. Law enforcement maintained visual surveillance of the CS to the intersection of Kimbrel Avenue and Michelle Circle in Panama City, Florida. Once the CS turned onto Michelle Circle, law enforcement relied upon recording devices to continue to monitor the controlled purchase.

12. Through the covert video recorder, law enforcement observed the following. At approximately 6:20 p.m., the CS arrived at 6124 Michelle Circle, Panama City, Florida. The CS went inside the mobile home that was located on the property. Inside the mobile home, the CS met with two people that the CS identified as Calvin Johnson and Cory Johnson. This identification was later verified by your affiant through an Alabama driver's license photo (Cory

4

Johnson) and Florida driver's license photo (Calvin Johnson). Per the CS, Calvin Johnson handed the CS the cocaine and the CS handed $2,000.00 to Cory Johnson. The CS, Cory Johnson, and Calvin Johnson exchanged conversation for a short period of time, and the CS then exited the mobile home.

13.   At approximately 6:33 p.m., the CS left the residence in his/her vehicle.  Law Enforcement maintained visual surveillance of the CS back to the predetermined location where the CS transferred custody of the cocaine (DEA Exhibit 23) to your affiant. At the same location, the recording devices were removed from the CS. The CS then traveled to the DEA Office under visual surveillance of law enforcement. At the DEA Office, the CS' person and vehicle were searched by law enforcement for contraband with negative results.

14.   Your affiant and TFO Cheri then debriefed the CS. The CS provided, in substance, the following information.

15.   The CS went to 6124 Michelle Circle and went inside the mobile home at the address. There were 6 to 7 people inside the mobile home. The CS met specifically with Calvin Johnson and Cory Johnson. The CS observed that the bag of cocaine that the CS purchased had already been separated from a larger bag of what appeared to be cocaine that was sitting on the counter. The CS estimated that the other bag contained approximately 6 to 8 ounces of suspected cocaine. The CS paid Cory Johnson $2,000.00 for the cocaine, and Calvin Johnson handed the CS the bag containing the cocaine. The CS believed that there was approximately 1.5 ounces of cocaine in the bag the CS purchased. When the CS was standing next to the CS' vehicle, Cory Johnson spoke to the CS about buying a larger quantity of cocaine and showed the CS a photo of

what the CS believed to be a whole kilogram (kilo) of cocaine. Cory Johnson offered to sell the CS a kilo of cocaine for $32,000.00.

16.  At the DEA Office, your affiant processed the cocaine (DEA Exhibit 23) as evidence. The approximate weight of the cocaine was 42.7 grams. Your affiant transferred custody of the DEA Exhibit 23 to the DEA Southeast Regional Laboratory for analysis. The video recordings and recorded telephone calls were submitted as evidence.

17.  On May 19, 2019, Forensic Chemist Lindsay Kaufman of the DEA Southeast Laboratory completed a report for the analyzation of Exhibit 23. The report identified Exhibit 23 as 89% pure cocaine hydrochloride with a net weight of 41.94 grams.

## CONTROLLED PURCHASE OF APPROXIMATELY 1.5 OUNCES OF COCAINE FROM CORY JOHNSON AND RANDY WEAVER ON MAY 23, 2019

18.  On May 23, 2019, under the direction of your affiant, the CS conducted a recorded telephone call to Cory Johnson at telephone number (256) 452-2154 (**Target Telephone**) and arranged for the purchase of 1.5 ounces of cocaine in exchange for $2,000.00.

19.  At approximately 4:28 p.m., law enforcement met with the CS at the DEA Office (Panama City Resident Office). The CS and the CS' vehicle were search by law enforcement for contraband with negative results. The CS was provided with $2,000.00 in official advanced funds (OAF) for the cocaine purchase. The CS traveled to a secondary meet location under visual surveillance by law enforcement. At the secondary meet location, a recording device was activated and provided to the CS. The CS then traveled to the intersection of Kimbrel Avenue and Michelle Circle in Panama City, Florida. Once the CS turned onto Michelle Circle, law enforcement relied upon a recording device to continue to monitor the controlled purchase.

6

20. Through the covert video recorder, law enforcement observed the following. At approximately 5:15 p.m., the CS arrived at 6124 Michelle Circle, Panama City, Florida. The CS went into the mobile home and knocked on the door. No one answered the door, so the CS returned to the CS' vehicle.

21. At approximately 5:20 p.m., the CS made a recorded call to the **Target Telephone** and spoke to Cory Johnson. The following is a summary of the conversation between Cory Johnson and the CS.

22. The CS asked Cory Johnson where he was at. Cory Johnson told the CS he (meaning another person other than himself) should be at the trailer. The CS responded that he was not here. Cory Johnson told the CS to hold on while he called the person to see where he was at. Cory Johnson called the CS back (not recorded) and said the person was about to pull up.

23. At approximately 5:25 p.m., a white GMC Yukon pulled into the driveway of 6124 Michelle Circle. The CS exited his vehicle and got into the front passenger side of the Yukon. While in the vehicle, a black male (later identified by the CS as Randy Weaver) handed the CS what they believed was approximately 1.5 ounces of cocaine. The CS paid Weaver $2,000.00 in in exchange for the cocaine. While they were conducting the transaction, a male was talking in the background through a speaker phone to Weaver and the CS (the CS later identified the male on the phone as Michael Hines). During the phone call Hines tried to get the CS to come to another location to conduct the transaction, however Weaver told Hines he was already there and was handling it. Hines told Weaver to give the CS his number. Weaver subsequently provided Hines' telephone number, (850) 215-2373, to the CS, and the deal was concluded.

7

24.  At approximately 5:29 p.m., Weaver left the residence in the GMC Yukon, followed by the CS. The CS relayed the description of the GMC Yukon to your affiant, who relayed the information to law enforcement personnel who were out on surveillance.

25.  Law enforcement maintained visual surveillance of the CS as the CS traveled to the predetermined meet location. At the predetermined meet location, the CS transferred custody of the cocaine (Exhibit 28) and the recording device to your affiant. The CS then traveled to the DEA Office under the visual surveillance of law enforcement. At the DEA Office, the CS and CS' vehicle were searched for contraband with negative results.

26. SA Rodriguez and your affiant debriefed the CS. The CS provided, in substance, the following information.

27. The CS went to 6124 Michelle Circle and went to the door to the mobile home at that address. The CS knocked on the door and no one came to the door. The CS returned to the CS' vehicle and made a recorded phone call to Cory Johnson. Cory Johnson told the CS he would check on where the person was at. Cory Johnson called back (unrecorded) and told the CS the person was about to pull up.

28. The CS said a black male driving a white GMC Yukon pulled into the driveway. The CS got into the passenger side of the Yukon and met with the black male. The CS explained that the CS knew the black male as "Randythatruth Weaver" and displayed a profile photo of Weaver from facebook TFO Deegins took a photo of it. TFO Deegins later identified the "Randythatruth Weaver" as Randy Weaver through the Florida Department of Highway Safety and Motor Vehicle Database by comparing his photo.

8

29.  The CS said that while in the vehicle, Weaver handed the CS a clear bag containing what Weaver said was approximately 1.5 ounces cocaine.  While conducting the transaction, the CS said Michael Hines was on speaker phone with Weaver and was telling Weaver and the CS to go to his (Hines) house. Weaver told Hines that he was there and was handling it. The CS said Hines told Weaver to give his (Hines) number to the CS. Weaver then told the CS the telephone number for Hines. The CS then got out of the Yukon and back into the CS's vehicle. The CS said Weaver left in his Yukon first and then the CS followed.

30. The CS said while the CS was traveling to the pre-determined meet location, Cory Johnson called (unrecorded) and asked if everything went okay. The CS told Cory Johnson it went good.

31. At the DEA Office, your affiant processed Exhibit 28 as evidence and conducted a reagent test. The reagent test gave a positive result for cocaine.

### BUY BUST OF CORY JOHNSON DURING PURCHASE OF 1 KILO OF COCAINE ON JUNE 26, 2019

32. On May 23, 2019, the following text message conversation transpired between the CS and Cory Johnson using **Target Telephone**.

- CS: "Working my ass of what u up to bro."

- Cory Johnson: "At Shell Island."

- CS: "Must be nice how long you in town for."

- Cory Johnson: "For a minute, What's up"

- CS: Shit tryin to catch up with you, I pick up my first block last week shit been boomin.

- Cory Johnson: "OK"
- CS: "34200 if you can beat that ticket I'll shop wit ya."
- Cory Johnson: "34"
- CS: "You don't budge much lmao I got about 9 left should be ready be next week for sure."
- Cory Johnson: "Waiting on you."

33. Your affiant submits that based on his training and experience, and debriefing of the CS, the above text message conversation entailed the purchase of cocaine.

34. On June 23, 2019, at the direction of your affiant, the CS made a recorded call to Cory Johnson, who was using the **Target Telephone**. During the conversation, the CS told Cory Johnson that he/she would be ready in next couple of days. The CS told Cory Johnson he had to get a few more dollars and then he/she would be ready. Cory Johnson asked what the CS was trying to do. The CS replied that he/she wanted to get a whole one. Your affiant knows that when the CS said he/she wanted a whole one, he/she was referring to a kilo quantity of cocaine. The CS told Cory Johnson that he/she should be ready on Tuesday.

35. On June 25, 2019, at the direction of your affiant, the CS made a recorded call to Cory Johnson, who was using **Target Telephone**. During the call the CS told Cory Johnson that he was ready. Cory Johnson told the CS he would not be back in town until 1 a.m. They then made arrangements to meet the following morning. The CS told Cory Johnson he/she would call when he/she was ready.

10

36. On June 26, 2019, at the direction of your affiant, the CS made a recorded call to Cory Johnson who was using **Target Telephone**. During the call, they made arrangements to meet at the gas pumps at the Walmart in Callaway, Florida. The CS told Cory Johnson he would call him when he got close.

37. On June 26, 2019, at approximately 10:25 a.m., law enforcement and the CS then met in the parking lot of Firehouse Subs, located at 805 N Tyndall Parkway, Callaway, Florida. The CS then made an unrecorded telephone call to Cory Johnson (monitored and in the presence of SA Manna and TFO Robert Hall) and told him where his/her vehicle was parked.

38. On June 26, 2019, law enforcement conducted surveillance on a residence Cory Johnson was suspected to be residing at (4523 Aster Street, Parker, Florida).  At approximately 10:33 a.m., law enforcement observed Cory Johnson leaving this residence, and get into his vehicle, which was a 2018 white Chevy truck displaying an Alabama License Plate of TPH836. Johnson then traveled to the parking lot of Firehouse Subs. Cory Johnson then backed into a parking space directly next to the CS' vehicle. At that time, the law enforcement pulled in front of Cory Johnson's vehicle and arrested him.

39. At the time of Cory Johnson's arrest, a state arrest warrant existed for his arrest for trafficking in cocaine. Based on probable cause, law enforcement searched the vehicle.  During this search, a kilo of cocaine was located on the floorboard in front of the rear seat, a loaded handgun was located in the center console, and the **Target Telephone** was located on top of the center console. The handgun, **Target Telephone**, and the kilo of cocaine was seized as evidence. Your affiant reviewed "Your Phone" aspect of the **Target Telephone** to confirm the telephone number.  Your affiant confirmed that the **Target Telephone** was the same phone previously used

11

by Cory Johnson to conduct sales of controlled substances. Your affiant conducted no further search of the **Target Telephone.**

40.   After the scene was secure, your affiant presented a *Miranda* Rights waiver form to Cory Johnson. Your affiant read Cory Johnson his *Miranda* rights as he followed along on the form. Cory Johnson signed the form and agreed to speak with law enforcement. Your affiant also presented a "consent to search" form to Cory Johnson. Your affiant explained to Cory Johnson that law enforcement observed him leaver 4523 Aster Street, Parker, Florida, and wished to search that residence for more illegal narcotics. Cory Johnson signed the permission to search form. Cory Johnson told SA John Manna and your affiant that his girlfriend and kids were at the house, and he didn't want his kids to see him in handcuffs.

41.   Your affiant, SA Manna, and Cory Johnson proceeded to 4523 Aster Street. Your affiant, SA Manna, and Cory Johnson's went to the door and asked Cory Johnson's girlfriend (Casey Brewer) and the children to come outside. Once the house was determined to be safe, your affiant, SA Manna, and Cory Johnson, and other law enforcement personnel went into a room that Cory Johnson shared with Brewer. In that room, Cory Johnson pointed out a duffle bag and said that it contained the rest of his stuff. In the bag, law enforcement located approximately 259.1 grams of crystal methamphetamine, 30 oxycodone pills, and approximately 14 ounces of cocaine. Other drugs and firearms were recovered in other locations inside the same bedroom. Cory Johnson stated all of the drugs belonged to him.

## CONCLUSION

42.  Based upon the facts set forth in this affidavit, your affiant believes there is probable cause to believe Cory Johnson and other unidentified co-conspirators have conspired to sell cocaine, in the Northern District of Florida.  Furthermore, your affiant believes that Cory Johnson used **Target Telephone** to facilitate the sale of cocaine and other illegal narcotics and that evidence of the sale or distribution of illegal narcotics is stored in the **Target Telephone**.

43.  Based upon the facts set forth in this affidavit, there is probable cause to believe that violations of Title 21, United States Code, Sections 841(a)(1), 846 have occurred, and evidence of the sale or distribution of illegal narcotics is located at the **Target Telephone**.  The **Target Telephone** is specifically described in Attachment A.  Your affiant seeks to search for items specifically described in Attachment B.  Your affiant knows, based on his training and experience, that individuals who sell controlled substances often use a cellular phone to contact customers and suppliers.  Your affiant would have to review all content of the telephone in order to determine what is relevant.


John Deegins
Task Force Officer
Drug Enforcement Administration


Sworn to and subscribed before me this 15th day of July, 2019


/s/ *Michael J. Frank*                                        /
Michael J. Frank
United States Magistrate Judge

## Attachment A

The **Target Telephone** is described as a black Samsung cellular telephone, model number SM-N950U, Serial Number R38J80VL5QX, IMEI #352076091125623, telephone number (256) 452-2154. The **Target Telephone** is located at the DEA Panama City Resident Office.

**ATTACHMENT B**

Evidence of violations of 21 U.S.C. §§ 841(a)(1), and 846.

1) Text messages;

2) Email messages and attachments;

3) Internet searches and the contents of those searches;

4) Photographs;

5) Contact Lists;

6)  GPS location data; and

7) Notes and documents contained on the phone.